UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CENTER TOWNSHIP OF DELAWARE COUNTY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:05-cv-0840-DFH-WTL ) |
| NORTHEAST FIRE APPARATUS, INC. and FREIGHTLINER, LLC., | ) ) ) ) |
| Defendants. | ) ) |

ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This diversity jurisdiction case is about a used fire truck that does not work anymore. In September 2000, plaintiff Center Township of Delaware County, Indiana purchased a 1976 85' LTI Aerial Platform Quint fire truck from defendant Northeast Fire Apparatus, Inc. At the time of the sale, Northeast was a wholly owned subsidiary of American LaFrance, which was in turn a wholly owned subsidiary of Freightliner, LLC. Center Township has asserted claims for breach of contract as well as breach of express and implied warranties. The claims are based on defects discovered in August 2003 for which repair costs would have exceeded the original purchase price of the fire truck.

Defendants have moved for summary judgment on all claims. Freightliner has moved for summary judgment because it simply had no involvement in the transaction, and plaintiff has conceded that it lacks evidence that Freightliner was

involved in the sale of the fire truck. Accordingly the court grants summary judgment in favor of Freightliner. The court also grants summary judgment for Northeast because the undisputed facts show no breach of contract or any warranty, as explained below.

*Summary Judgment Standard*

Summary judgment should be granted if and only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine factual question exists, the court examines the pleadings and the proof as presented in depositions, answers to interrogatories, admissions, and affidavits made a part of the record. *First Bank & Trust v. Firstar Information Services, Corp.*, 276 F.3d 317, 321 (7th Cir. 2001). The court also draws all reasonable inferences from undisputed facts in favor of the non-moving party and views the disputed evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).[1] However, the non-moving party may not rest upon mere allegations in the pleadings or on affidavits that are speculative or conclusory in nature. Center Township must go beyond the pleadings and support its contentions with admissible evidence. *Celotex Corp. v. Catrett*,

---

[1]While the court is required to view the evidence in the light most favorable to the non-moving party, Local Rule 56.1 provides that, to the extent the non-moving party fails to controvert specifically the facts set forth in the moving parties' "Statement of Material Facts Not in Dispute," the court may assume those facts to be true.

477 U.S. 317 (1986). Only competing evidence regarding facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). If the non-moving party would be unable to prove an element essential of its case, one on which it would bear the burden of proof at trial, summary judgment should be granted to the moving party. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

*Facts for Summary Judgment*

Plaintiff Center Township is a political subdivision of Delaware County, Indiana, organized pursuant to sections 36-6-1-1 through 36-6-8-13 of the Indiana Code. Defendant Northeast Fire Apparatus, Inc. is a corporation organized and operating under the laws of the state of Pennsylvania, with its principal place of business in Landisville, Pennsylvania. Freightliner, LLC is a limited liability corporation whose only member is a citizen of Delaware and Michigan for purposes of diversity jurisdiction. See *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members").

In September 2000, Center Township Trustee Richard D. Shirey and Fire Chief Gary Green were in the market for fire trucks.[2] In the course of their search,

---

[2]A township's duties regarding fire protection are outlined in sections 36-8-
(continued...)

they became acquainted with Northeast, a dealer of used fire trucks and other emergency vehicles. After a visit to Northeast's facility, Shirey agreed on behalf of Center Township to purchase six used trucks, including the 1976 85' LTI Aerial Platform Quint at the heart of this case.

The parties memorialized their purchase agreement in a September 28, 2000 letter. Def. App. Ex. 1. This one-and-a-half page document signed by both Northeast and Center Township confirms the township's intention to purchase the 1976 LTI Aerial for $79,000. The letter makes no mention of any warranty or guarantee by Northeast, though it records the seller's promise to paint the fire truck's canopy black as per Chief Green's request.

The first record of trouble with the 1976 LTI Aerial came in October 2000, before the sale was complete. In advance of delivery, Northeast retained Independent Testing Laboratories ("ITL") to determine whether the truck could be certified as operational under National Fire Protection Association ("NFPA") standards. Defs. App. Ex. 5. The 1976 LTI Aerial failed. ITL noted four major defects that prevented certification, of which one was a crack in a weld between the outrigger boxes. ITL also noted a number of minor defects that did not affect NFPA certification. Northeast made the major repairs and the truck was certified as complying with NFPA standards.

---

[2](...continued)
13-2 through 36-8-13-9 of the Indiana Code.

On November 22, 2000 Center Township signed and accepted Northeast's limited power train warranty on the 1976 LTI Aerial. The warranty ran for a period of 90 days after Center Township took delivery of the truck, and covered "the engine, transmission, rear axis, and driveline." Def. App. Ex. 7. The warranty explicitly excluded coverage for all wear items, hoses, belts, fluids, and filters. Also excluded was any damage caused by operator error or abuse, accident, collision, fire, theft, or normal wear and tear.

Center Township took delivery of the 1976 LTI Aerial, sometime around December 11, 2000. Def. App. Ex. 4. Township Trustee Shirey acknowledged receiving the truck in good condition. *Id.* For the next sixteen months, Center Township operated the fire truck without complaint.

In April 2002, however, Center Township became aware of problems with the 1976 LTI Aerial's torque box. In the course of seeking insurance coverage, Center Township had retained Underwriters Laboratories, Inc. ("UL") to determine whether the fire truck met NFPA standards. UL found a number of problems that would have to be addressed before it could certify the fire truck. Def. App. Ex. 10. UL's list was wide-ranging and included two cracks in the welds of the torque box. UL described these two cracks as follows:

1. Cracked weld, left side, topside of H-Box, at stabilizer.
2. Cracked weld, right side, topside of H-Box, at stabilizer.

Def. App. Ex. 10. UL stated that it would need to reinspect the fire truck after the repairs were made in order to issue NFPA certification. *Id.*

After receiving UL's report, Center Township contacted Northeast alleging that several of the defects pre-dated the township's ownership of the 1976 LTI Aerial.[3] Center Township asked defendant in a May 16, 2002 letter to: (1) take back the fire truck and refund the full purchase price, (2) perform all necessary repairs while providing a loaner fire truck, or (3) provide a replacement truck that was as good or better than the 1976 LTI Aerial. Def. App. Ex. 11. The township ended its letter by threatening "formal action" if Northeast did not respond. *Id.*

On May 30, 2002, Northeast agreed to repair the 1976 LTI Aerial and to provide Center Township with a loaner for the length of the repairs. Def. App. Ex. 12. The two sides spent the next month hashing out details of the repair work. Ultimately, Northeast offered to repair all the defects listed in UL's report. Pl. App. Ex. 4. In making this offer Northeast stated: "Upon recertification of your aerial, we believe that we have fulfilled our initial obligation as agreed upon at the time of purchase." *Id.* Center Township agreed to the arrangement in a letter dated June 27, 2002. Def. App. Ex. 13.

---

[3]Center Township's letter listed the following as examples of pre-existing defects: the use of Grade 5 bolts (instead of Grade 8) in the torque box, cracked welds, leaking hydraulic lines, seals, and water seals. Def. App. Ex. 11.

-6-

Northeast took the 1976 LTI Aerial to its Pennsylvania repair facility in July 2002 and returned it to Center Township in September 2002. In December 2002 UL issued its NFPA certification for the truck, stating:

> This is to certify that on 4/16/02 the aerial device identified above was examined and tested by Underwriters Laboratories, Inc., and found to comply with NFPA Standard 1914, 1997 Edition.

Def. App. Ex. 14. With the truck thus certified as complying with the NFPA standards, Center Township used the truck without complaints or problems for the next eight months.[4]

---

[4] Center Township has tried to raise doubts about whether UL actually examined the torque box before issuing its December 2002 certification. According to plaintiff, the fact that UL's certification mentions only the April 2002 examination supports a reasonable inference that UL never directly confirmed that Northeast actually repaired the truck after April 2002. Though plaintiff originally represented that it would bolster this inference with documents it hoped to obtain from UL, it has since chosen not to do so. See Docket No. 62. The court is mindful that "the drawing of legitimate inferences from the facts [is a] jury function[]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), not that of a judge. On summary judgment the court must draw all reasonable inferences in favor of the non-moving party – here, Center Township. *Id.*

Regarding the examination issue, however, Center Township is asking the court to go beyond drawing a legitimate inference and instead to engage in speculative guesswork. Rather than conclusively establish whether a new examination took place, Center Township instead chose to rest on the ambiguity in the certifying document. Though the non-moving party is due the benefit of every legitimate inference, "such inferences may not rest on conjecture or speculation, but rather the evidence offered must make 'the existence of the fact to be inferred more probable than its nonexistence.'" *DiPalma v. Westinghouse Electric Corp.*, 938 F.2d 1463, 1464 (1st Cir. 1991). Absent any evidence that UL actually failed to perform a subsequent reinspection, plaintiff has failed to raise a genuine issue of fact as to whether UL inspected the truck before certifying it in December 2002.

-7-

When Center Township performed routine maintenance on the fire truck in August 2003, however, it discovered the torque box was "cracked through where the vertical plane meets the horizontal plane." Def. App. Ex. 9. Plaintiff then learned that the entire torque box would have to be replaced at an estimated cost of $100,000 to $150,000, more than the original price plaintiff had paid for the used fire truck. *Id.* This suit followed. Additional facts are noted below, keeping in mind the standard for summary judgment.

*Discussion*

I.   *Northeast's 2002 Repair Efforts*

Plaintiff's claims against defendant Northeast hinge on plaintiff's ability to prove one essential element: that Northeast failed in 2002 to repair the cracked welds on the 1976 LTI Aerial's torque box. This allegation lies at the heart of all plaintiff's claims and is the sole factual dispute between the parties. See Docket. No. 45.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Ratio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party would be unable to prove an element essential to its case, one on which it would bear the burden of proof at trial, then there is no genuine need for that trial. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996). The "mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Accordingly the question for the court on summary judgment is whether Center Township has come forward with evidence that would allow a reasonable jury to find in its favor on this issue.

Beyond the facts previously discussed, plaintiff has offered two additional pieces of evidence in an effort to meet its burden. Center Township Trustee Shirey has submitted an affidavit detailing his interaction with defendant Northeast after learning in August 2003 that the 1976 LTI Aerial's torque box welds were cracked. Center Township also offers a report from expert witness Dr. Jason Hertzberg detailing his analysis of the cracked torque box.

    A.    *Affidavit of Township Trustee Richard Shirey*

Sometime after he learned of the cracked torque box in August 2003, Trustee Shirey contacted Northeast and requested copies of all invoices and other documentation relating to repairs of the 1976 LTI Aerial. According to Shirey, Northeast declined these pre-litigation requests for documents.[5]

---

[5] Northeast questions the relevance of Shirey's affidavit and has moved to strike under Federal Rule of Evidence 402. The court denies this motion. Shirey's testimony is relevant and should be part of the record, even though the court finds the testimony is not sufficient to establish a genuine issue of material fact regarding Northeast's repair efforts.

Relying on a number of cases discussing the use of an adverse inference against a party that fails to produce documents in its control, plaintiff Center Township argues that Northeast should suffer the same fate. See, *e.g.*, *S.C. Johnson & Son v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 259 (7th Cir. 1982) (finding inference not warranted); *Commercial Insurance Co. of Newark v. Gonzalez*, 512 F.2d 1307, 1314 (1st Cir. 1975) (same); *Allen v. American Home Products, Inc.*, 1992 WL 247581, at *18 (N.D. Ind. May 6, 1992) (declining to draw inference).

An adverse inference would not be warranted in this case. The crucial difference in this case is that Shirey made his request informally and prior to litigation, when Northeast was under no obligation to actually turn over the documents in question. Since filing suit, plaintiff has not served Northeast with a single formal request to produce the documents in question. This is not a situation where Northeast has shirked its discovery obligations, destroyed unfavorable documents, or otherwise acted in bad faith to frustrate plaintiff's efforts to obtain probative evidence. Based on the record, it is not even clear who controlled these documents at the time of Shirey's request. Under the circumstances an adverse inference would be neither just nor appropriate.

B.     *Report from Dr. Hertzberg*

Center Township has also offered a report from expert witness Dr. Jason Hertzberg, an engineer from Exponent Failure Analysis Associates.[6] Dr. Hertzberg examined the state of corrosion on the three cracked panels of the torque box and noted that the top surface was significantly more corroded than the driver and passenger-side panels. According to Dr. Hertzberg, this difference indicates that the top surface cracked before the two side panels. This led him to conclude in his May 4, 2004 report that "the cracking of the torque box occurred over an extended period of time, in multiple stages rather than as a result of a single overload event." Pl. App. Ex. 2.

Northeast has moved to exclude this report pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. In the Amended Case Management Plan, plaintiff Center Township agreed that it "shall disclose the name, address, and vita of all expert witnesses, and shall serve the report required by Fed. R. Civ. P. 26(a)(2)(B) on or before August 1, 2006." Docket No. 22. Though Dr. Hertzberg became involved in this matter and issued his report more than two years before the disclosure deadline, Center Township chose not to reveal this information in the manner agreed by the parties, ordered by the court, and required by Rule 26(a)(2).

---

[6]Dr. Hertzberg was originally retained by plaintiff's insurance company to determine whether the policy would cover the damage to the torque box; his findings apparently led the insurance company to deny coverage. He now appears ready to testify on behalf of plaintiff in this litigation.

-11-

Under the circumstances the court is bound by Federal Rule of Civil Procedure 37(c)(1): "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use that evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless such disclosure was justified or harmless." *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004).

Center Township makes no attempt to justify its failure to designate Dr. Hertzberg properly as an expert witness. See Docket No. 62. Instead it argues that the non-disclosure was harmless because it furnished a copy of Dr. Hertzberg's report to defendant's dealer and agent, Stoops Freightliner, in November 2004. *Id.*[7]

The court disagrees that plaintiff's obvious oversight should be excused on the basis of its November 2004 communication to a non-party. "Expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Sherrod v. Lingle*,

---

[7]Plaintiff's letter discussing Dr. Hertzberg's report addresses (at varying points) Michael Blouch, general manager of American LaFrance, Jerry Kling, of Northeast, and Gary Hickman of Stoops Freightliner. However, plaintiff claims in its brief to have sent this letter only to Stoops Freightliner. Docket No. 62. The court will rely on plaintiff's representation in its brief.

223 F.3d 605, 613 (7th Cir. 2000). Center Township has offered no reason to think that giving a copy of the report to a non-party, six months before the lawsuit was filed, resulted in actual notice to Northeast that it intended to offer Dr. Hertzberg as a witness in the case.

As a consequence, Northeast had no opportunity to depose Dr. Hertzberg prior to the deadline for dispositive motions. Nor has defendant had the chance to take any of the countermeasures typically associated with expert witnesses, such as retaining rebuttal experts. See *Musser*, 356 F.3d at 758. Northeast has clearly been harmed. Under the circumstances the court finds exclusion of Dr. Hertzberg's report is required under Rule 37(c)(1).[8]

Summary judgment is a time for parties to lay their evidentiary cards on the table. In this case, the cards simply do not support Center Township's claim that Northeast failed to repair the 1976 LTI Aerial's torque box in 2002.

---

[8]Even if Dr. Hertzberg's report were allowed into evidence, it would not justify denial of summary judgment. Cf. *Musser*, 356 F.3d at 760 (urging courts to carefully consider the use of Rule 37(c) when the exclusion would determine the outcome). Though Dr. Hertzberg concluded that a sudden event did not cause the cracks in the torque box, his report offers no opinion as to when the cracks first occurred, how long the cracks existed, or even how long it took for all the cracks to form. It merely establishes that the cracks formed over a period of time, which might or might not have included the months before the 2002 repairs. The report would not allow a reasonable jury to conclude that the cracks probably existed when Northeast returned the 1976 LTI Aerial to Center Township in 2002.

It is undisputed that Northeast transported the 1976 LTI Aerial to its Pennsylvania repair facility in July 2002 and returned it to Center Township after three months. Underwriters' Laboratories certified that the truck met NFPA standards after leaving the repair facility. After Center Township took delivery in September 2002, it had exclusive control of the 1976 LTI Aerial for nearly a year and actively used the 26-year-old fire truck without complaint for at least eight months.

Center Township nevertheless insists that the 1976 LTI Aerial's torque box was damaged when defendant Northeast returned the fire truck in September 2002. There is no direct evidence that the welds were cracked at that time. The circumstantial evidence is such that a jury could do no better than tossing a coin to decide when the cracks formed. See *James v. Otis Elevator Co.*, 854 F.2d 429, 432 n.3 (11th Cir. 1988) ("A fact that can only be decided by a coin toss has not been proven by preponderance of the evidence, and cannot be submitted to the jury"). Even when viewed in the light reasonably most favorable to plaintiff, plaintiff can establish only that cracks existed on the torque box after that 26-year-old truck had already been subject to eight months of active use by plaintiff's fire department. The principal evidence supporting plaintiff's claim stems from township trustee Shirey's allegation that defendant declined to send documentation of the repairs – even though Northeast was under no legal obligation to do so. Though plaintiff now relies heavily on the existence or non-existence of these documents, it apparently did not feel strongly enough about

-14-

these records to make a formal request for production to defendant. Plaintiff has offered no other evidence – admissible or not – that would allow a jury to make a rational finding as to whether the cracks existed when Northeast returned the truck in September 2002 or instead formed after plaintiff's own extended use of the decades-old truck. These circumstances warrant summary judgment in favor of Northeast.

II.     *Northeast's Legal Obligations*

Plaintiff's failure to present a genuine issue of fact as to whether Northeast failed to repair the 1976 LTI Aerial's torque box in 2002 is sufficient to support summary judgment on all of plaintiff's claims. There is also ample room to question the extent to which Northeast was legally obligated even to make such repairs at all.

A.     *Breach of Contract*

According to Center Township, Northeast breached the terms of the original September 2000 sales contract by failing to repair the welds of the torque box in 2002. This is a particularly difficult claim for plaintiff to maintain, given the lack of any language in the original sales agreement obligating Northeast to make future repairs. "The parties to a contract have the right to define their mutual rights and obligations, and a court may not make a new contract or supply omitted terms while professing to construe the contract." *Johnson v. Sprague*,

614 N.E.2d 585, 588 (Ind. App. 1993). The terms of the original September 2000 agreement obligated Northeast to do two things in exchange for the $79,000 purchase price: (1) deliver the fire truck, and (2) paint the canopy black. Shortly before Center Township took delivery of the 1976 LTI Aerial, Northeast agreed to provide a 90-day limited power train warranty.[9] These are the only contractual conditions on record prior to December 2000, when Northeast delivered an NFPA-certified and operational fire truck.

At best, Northeast's June 2002 letter (in which it agreed to repair the cracked torque welds) constituted a new agreement between the parties. However it is open to question whether this new obligation was adequately supported with consideration.[10]

B.   *Express Warranty*

Center Township also claims that Northeast breached an express warranty from the 2000 sales agreement by failing to repair the fire truck in 2002. When there is a written agreement, whether express warranties were made is a question of law for the court. See *Martin Rispens & Sons v. Hall Farms, Inc.*, 621 N.E.2d

---

[9] Plaintiff acknowledges that this 90-day limited power train warranty did not cover the damage to the torque box. Pl. Br. 4.

[10] Center Township was not responsible for any of the costs of transportation, repairs, or the loaner vehicle. Pl. App. Ex. 4. Nor at any point does Center Township affirmatively state that it will relinquish any right to sue Northeast in exchange for the repairs in question.

1078, 1082 (Ind. 1993). For the sale of goods subject to the Uniform Commercial Code sales article, an express warranty is created as follows:

> any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

Ind. Code § 26-1-2-313(1)(a). Plaintiff has not alleged that Northeast made any promise to repair subsequent damage to the 1976 LTI Aerial during the 2000 sales negotiations. The only express agreement resulting from the sales negotiation was Northeast's limited power train warranty, which ran for 90 days after delivery and did not cover the torque box. Though Northeast may have agreed to repair the cracked torque box in 2002, there is no reason to believe that this was part of the sales negotiation two years earlier. See Ind. Code § 26-1-2-313 cmt. 3 ("In actual practice affirmations of fact made by the seller about the goods *during a bargain* are regarded as part of the description of those goods.") (emphasis added). Under the circumstances there is no basis for finding that Northeast made an express warranty ensuring the sturdiness of the 1976 LTI Aerial in 2002 – two years after the sale was negotiated.

    C.    *Implied Warranty of Merchantability*

Unlike an express warranty, the implied warranty of merchantability is not a creature of agreement but is rather "imposed by operation of law for the protection of the buyer." *Jameson Chemical Co. v. Love*, 401 N.E.2d 41, 48 (Ind.

App. 1980), citing *Woodruff v. Clark County Farm Bureau Cooperative Ass'n*, 286 N.E.2d 188, 194 (Ind. App. 1972). Though in 2000 Northeast never affirmatively promised more than a black-painted fire truck with a 90-day limited power train warranty, it still was obligated to provide a product that was "fit for the general purpose appropriate to such goods." Ind. Code § 26-1-2-314 cmt. 3.

The depth of Northeast's responsibility, however, must be measured with regard to the fact that the fire truck in question was already decades old at the time of sale. "A contract for the sale of second-hand goods . . . involves only such obligation as is appropriate to such goods for that is their contract description." *Id.* Merchantability requires the seller provide goods that conform only to "ordinary standards of care and . . . are of average grade, quality and value of similar goods sold under similar circumstances." *Sharp v. Tom Wood East, Inc.*, 822 N.E.2d 173, 175 (Ind. App. 2004), citing *Woodruff*, 286 N.E.2d at 194. In this case plaintiff agreed to purchase a fire truck that was already 24 years old at the time of sale. Upon delivery in December 2000, Township Trustee Shirey acknowledged that the vehicle was in good condition. Def. App. Ex. 4. For sixteen months, Center Township used the fire truck without any complaint. Following the 2002 repairs, Center Township was able to get another eight months of active service from the 1976 LTI Aerial. Insofar as "warranties of merchantability and reasonable fitness do not contemplate that goods should last forever," *Coca-Cola Bottling Co. - Goshen, Ind. v. Vendo Co.*, 455 N.E.2d 370, 375 (Ind. App. 1983), any such warranty was satisfied in the current case.

*Conclusion*

Plaintiff has failed to come forward with admissible evidence that would allow a reasonable jury to find that defendants are legally responsible for the break-down of the used fire truck years after the sale. Accordingly, the court grants defendants' motion for summary judgment. Final judgment shall be entered.

So ordered.

Date: November 28, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Bruce Noel Munson
bnmunson@aol.com

Pamela A. Paige
DEFUR VORAN LLP
ppaige@defur.com,kcarr@defur.com